IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ALMALIK BRYANT,
    Plaintiff,

v.                                 Civil No. 3:24cv831 (DJN)

ANTOINETTE V. IRVING, *et al.*,
    Defendants.

## **MEMORANDUM OPINION**

Almalik Bryant, an inmate at the Federal Correctional Institution, Fort Dix, who is proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] Bryant contends that Defendants Antoinette Irving ("Sheriff Irving"), Catana Harris ("Captain Harris"), and Elizabeth Ruffin ("Sergeant Ruffin") (collectively, "Defendants") violated several of his constitutional rights while he was held at the Richmond City Jail ("RCJ"). (ECF Nos. 10, 11.) The matter is before the Court pursuant to the Court's screening obligations under 28 U.S.C. §§ 1915A and 1915(e)(2), as well as two Motions to Dismiss — one filed by Sheriff Irving (ECF No. 23) and a second by Captain Harris and Sergeant Ruffin (ECF No. 41). The Court provided Bryant with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), (ECF Nos. 26, 43), and Bryant has opposed both Motions to Dismiss. (ECF Nos. 27, 44.) Defendants have

---

[1]    The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

filed Replies in support of their Motions. (ECF Nos. 29, 45.) For the reasons stated below, Defendants' Motions to Dismiss (ECF Nos. 23, 41) will be GRANTED IN PART AND DENIED IN PART.

## I.    STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570,

2

rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

Further, when a plaintiff proceeds *pro se*, courts construe a complaint liberally to ensure that potentially meritorious claims survive. *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980). "[T]his liberal construction allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasknick*, 42 F.4th 214, 218 (4th Cir. 2022). "Principles requiring generous construction of *pro se* complaints are not, however, without limits," *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), and courts cannot "conjure up every claim imaginable from the plaintiff's allegations." *Jackson v. Dameron*, 171 F.4th 641, 645 (4th Cir. 2026).

## II.    SUMMARY OF ALLEGATIONS AND CLAIMS

Bryant has filed two Particularized Complaints (ECF Nos. 10, 11) that Defendants have read in conjunction with one another. In the first of his two Particularized Complaints, Bryant alleges, in relevant part, as follows:[2]

> 1)    On September 24, 2024, while at [RCJ], I was ordered to be housed on F Pod on the 5th [floor]. Upon arriving to the assign[ed] cell I was approach[ed] by the current occupant of that cell and was told to go to another cell. About two hours

---

[2]    The Court employs the pagination assigned by the CM/ECF docketing system and corrects the capitalization, punctuation, spelling and grammar in quotations from the parties' submissions.

3

later that same individual tap[ped] me on the shoulder to come speak with him in the cell I was assigned to. When I got in the cell it was just three of us then two more individuals came in and pull[ed] out shanks (knives) and demanded money via CashApp or Apple Wallet. I initially refused and was attacked by all four ass[ailants] which I then began to comply and arrange to send them the money. [3]

I was threatened by the ass[ailant] [as] well as the safety of any friends and family if I told an officer. I eventually told an officer within ten hours of the incident and was moved to solitary confinement which I was subjected to spending 23&1 in the cell for eight days before I finally met with Captain Harris and was interrogated by her [about] the incident. At her directive I was then place[d] in a similar unit to solitary confinement she term[ed] to be PC (protective custody) where I spent the remainder of my time from Sept 24th until January 13th 2025 locked down on 23&1 without recreation during the duration of that time.

2)     The next day of the assault I was to be examined by the medical staff. I had lumps on my head, a stab wound on my left hip and my body ached. I asked to get a [tetanus] shot for my stab wound but was refused [be]cause the nurses determine[d] the wound wasn't deep enough to cause an infection. I was only given pain med[icine] for a two week period. I had a strain[ed] muscle in my stomach that I let the doctor know bothered and troubled me but was never given proper medical care although I let the doctor know that it caused me back pain which I barely could climb out [of] the bed.

3)     During my time in punitive isolation (protective custody) from Sept. 24th 2024 until Jan 13th 2025, everyday I [was] subject[ed] to cavity searches. Only allowed one hour outside the cell per day. The cell was smaller than a parking lot. The windows were tinted and boarded up with a metal plate with small[] holes in it. No sunlight was able to enter the cell. Not once did I receive recreation. Not once. Wasn't allowed no contact visits. No social interactions with other inmates/residents. Due to the strict isolation I began to suffer physical and mental harm, including and not limited to depression, anxiety, post-traumatic stress disorder, mood swings, shortness of breath[], etc. I wrote to mental health within the facility and was given puzzles to entertain my thoughts as one staff [member] put it.

4)     [D]uring the same period in punitive isolation, Sergeant Ruffin destroyed and threw away my religious material (Final Call newspaper). I told her I was going to grieve the matter and in retaliation she suspended my commissary (canteen) phone call privileges, and tablet privileges for seven days without me breaking a rule or regulation. She never wr[ote] me up, I never went to a hearing etc.

5)     I filed numerous grievances on each incident from paragraph 1–4 that [were] met with silence. I showed the cameras each grievance form before placing them into the mailbox as proof of submitting them. I also log[ged] times and dates

---

3       Bryant's Particularized Complaint is organized curiously. For instance, what Bryant has labeled as "pg 2" contains the third numbered paragraph in his statement of facts while "pg 3" contains the second numbered paragraph. (*See* ECF No. 10 at 2–3.) For ease of reading, the Court has reordered the narrative of facts by the paragraph numbers Bryant uses rather than the page numbers he has assigned.

of dropping the grievances. I also had my love[d] ones send dozens of emails to Sheriff Irving and Ms. Captain Harris. This is also documented.

(ECF No. 10 at 2–5.)

Bryant's second Particularized Complaint, filed two days after the first, alleges:

1)      . . . . On Sept 16th, 2024, I entered Richmond City Sheriff's Office and was seen by a nurse concerning any religious diet. I told the nurse I'm a Rastafarian and adhere to a religious diet called "Ital." She stated she never heard of it and may I describe it to her. Once I described the Ital diet to her she put in the jail system "no pork, no processed foods" as my diet on my behalf. Richmond City Jail failed to honor my diet. They continued to give me processed foods and proce[ssed] meats through the duration of my presence being there from Sept. 16th 2024 until Jan. 13th 2025.
2)      I grieved the matter of me not receiving my religious diet (Ital) via grievance form and also through the grievance process provided via tablet. I never received a response. I also beg[a]n having my girlfriend send both Sheriff Irving and Captain Harris emails concerning the matter which also went unanswered. Through the grievance process I submitted several forms to several departments within the Richmond Jail facility.
        A grievance was sent to the chaplain, medical, and grievance coordinator. My request went unanswered.

(ECF No. 11 at 1–2.)

Across his two Particularized Complaints, Bryant raises the following claims:

Claim One       Sheriff Irving and Captain Harris violated Bryant's rights under the Eighth Amendment[4] by failing to station a sufficient number of officers in his housing unit, thereby permitting him to be attacked by other inmates. (ECF No. 10 at 5.)

Claim Two       Sheriff Irving and Captain Harris violated Bryant's rights under the Eighth Amendment by permitting him to remain isolated in protective custody, "without recreation, . . . sunlight, exercise [or] social interaction," for twenty-three hours per day, for over three months. (Id. at 5–6.)

---

[4]      "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

Claim Three Sergeant Ruffin violated Bryant's rights under the Fifth[5] and Sixth[6] Amendments when she "played accuser, judge, and executioner, taking away all [of his] privileges for seven days without . . . giving [him] an institutional charge[] and going through the hearing process." (*Id.* at 6.)

Claim Four Sheriff Irving and Captain Harris violated Bryant's rights under the First,[7] Fifth and Sixth Amendments by failing to ensure he received a diet consistent with his religious beliefs. (ECF No. 11 at 1–2.)

Bryant seeks relief in the form of "retribution and compensation for [his] physical and mental suffering in the amount [of] 333,000.00 dollars." (*Id.* at 2.)

## III. MOTIONS TO DISMISS

Sheriff Irving, Captain Harris and Sergeant Ruffin's motions to dismiss raise identical arguments for dismissal: (1) that Bryant has failed to state a viable claim for relief and (2) that the filers are entitled to qualified immunity. (ECF Nos. 24, 42.) The Court will therefore address both Motions to Dismiss together.

### A. Claims One and Two (Eighth Amendment)

Bryant seeks relief under the Eighth Amendment in both Claim One and Two, but on distinct factual bases. In Claim One, Bryant asserts that Sheriff Irving and Captain Harris failed to protect him from harm at the hands of other inmates. (ECF No. 10 at 5.) In Claim Two, he

---

[5] "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V.

[6] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

[7] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.

contends that Sheriff Irving and Captain Harris subjected him to unconstitutional conditions of confinement in protective custody. (*Id.* at 5–6.)

At the outset of the analysis, the Court questions whether the Eighth Amendment, which governs claims by inmates who have been convicted of criminal offenses, is the appropriate constitutional provision under which to assess Claims One and Two. The events underlying this suit took place at RCJ, a municipal jail, the type of facility in which detainees are often housed while awaiting trial. Moreover, Bryant was recently sentenced by another Judge of this Court, *see* Judgment, *United States v. Bryant*, 3:24-cr-171 (HEH) (E.D. Va. May 15, 2026), ECF No. 255, and is now in federal prison. (ECF No. 46). It therefore appears to the Court that Bryant was likely a pretrial detainee when the events underlying this action occurred. If that is the case, the Fourteenth Amendment, not the Eighth, governs Bryant's claims. *See Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) (citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)). Out of an abundance of caution, the Court will assess Claims One and Two under both provisions.[8]

### 1.    Claim One - Failure to Protect

In Claim One, Bryant asserts that Sheriff Irving and Captain Harris violated his rights by failing to station a sufficient number of officers in his housing unit, thereby permitting him to be attacked by other inmates. (*See* ECF No. 10 at 5.)

### a.    Eighth Amendment Standard

To state an Eighth Amendment claim, an inmate must allege facts that indicate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298

---

[8]    Defendants argue that Bryant is not entitled to relief under either the Eighth or Fourteenth Amendments. (ECF No. 24 at 13 n.1; ECF No. 42 at 13, n.1.)

(1991)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)). "What must be [alleged] with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

As to the claim at issue here, the Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, not every harm caused by another inmate translates into constitutional liability for the officers responsible for the inmate's safety. *Id.* at 834. Instead, to state an Eighth Amendment claim based on an official's failure to protect him, a prisoner-plaintiff must allege facts that plausibly suggest that he was "incarcerated under conditions posing a substantial risk of serious harm," *id.* (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)), and that the defendant acted with "deliberate indifference" to that danger. *Id.* at 837.

As to the first of these elements, the risk faced by an inmate may be specific to him or affect his institution more generally. As this Court has previously opined: "At the most obvious end of the spectrum is the known risk to the particular plaintiff at the hands of a particular assailant. At the other end is knowledge of a risk so pervasive that it affects all inmates." *Westmoreland v. Brown*, 883 F. Supp. 67, 75 (E.D. Va. 1995); *see also Farmer*, 511 U.S. at 843 ("[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk."). In either case, it must be "highly

8

probable" that a particular attack will occur. *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005); *see, e.g., Purvis v. Johnson*, 78 F. App'x 377, 379 (5th Cir. 2003) (concluding that plaintiff's allegations that he informed officials four times that his cellmate was a racist and threatened him every day because he was white sufficiently stated a claim for failure to protect). The "mere possibility" of violence is insufficient to meet the threshold for "substantial risk of serious harm." *See Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006) ("[T]here must be a strong likelihood rather than a mere possibility that violence will occur." (internal quotation marks omitted)).

As to the second element, deliberate indifference requires the plaintiff to allege facts suggesting that a particular defendant actually knew of and disregarded a substantial risk of serious harm to the plaintiff's person. *Farmer*, 511 U.S. at 837. "Deliberate indifference is a very high standard — a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). As the Supreme Court articulated in *Farmer*:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *id.*); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (stating the same). Thus, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the

official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

### b.  Fourteenth Amendment Standard

Before the United States Court of Appeals for the Fourth Circuit's decision in *Short v. Hartman*, 87 F.4th 593 (4th Cir. 2023), courts within the Fourth Circuit applied the two-part test just discussed to failure-to-protect claims raised by pretrial detainees and convicted inmates alike.  In *Short*, however, the Fourth Circuit held that a pretrial detainee's deliberate indifference claim under the Fourteenth Amendment is "solely an objective one."  87 F.4th at 609 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).  The court did not alter the first prong of the two-part test, which requires the plaintiff to allege that the defendant "exposed him 'to an objectively substantial risk of serious harm.'" *Carmona v. Martin*, No. 23-6930, 2024 WL 4490695 at *2 (4th Cir. Oct. 15, 2024) (quoting *Younger v. Crowder*, 79 F.4th 373, 382 (4th Cir. 2023)).  Now, however, "[t]he plaintiff no longer has to show that the defendant had actual knowledge . . . and consciously disregarded the risk." *Short*, 846 F.4th at 611.  Instead, "it is sufficient that the plaintiff show that the defendant's action or inaction was, in *Kingsley*'s words, 'objectively unreasonable,': that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly." *Id.* (internal citation omitted).

### c.  Application

Here, the Particularized Complaint does not allege a failure to protect claim under either the Eighth or Fourteenth Amendment, because it fails to allege the existence of a substantial risk of harm.  Of course, "[a]ny time an individual is incarcerated, there is *some* risk that he may be a victim of violence at the hands of fellow inmates." *Westmoreland*, 883 F. Supp. at 74 (emphasis

added).  But this omnipresent, lower-level risk does not suffice to support a constitutional claim. *See id.* ("It is not possible to eliminate the risk of assault in jails for pretrial detainees or convicted felons, any more than it is to eliminate that risk in society at large.").  Instead, as observed above, a constitutional claim will lie only where it is "highly probable" that a particular attack will occur. *See Brown*, 398 F.3d at 911.

Here, the Particularized Complaint does not contain any facts to support the notion that Bryant's assault was probable, let alone highly probable.  As to a risk of individualized harm, it does not allege, for instance, that the inmates who assaulted Bryant were known enemies or that Bryant had any particular personal characteristic that placed him at a higher risk of attack than any other individual. *See Westmoreland*, 883 F. Supp. at 74 (opining that the existence of a "personal trait" or "membership in an identifiable class that is particularly vulnerable to harm" constitute characteristics indicative of an individualized risk of harm).  Nor does the pleading suggest that assaults in RCJ were so pervasive that an actionable, generalized risk to Bryant existed. *See id.* at 75 (finding that "the risk of serious harm can be said to be substantial even though the precise victim or assailant are not ascertainable"); *Farmer*, 511 U.S. at 843–44 (opining that a substantial, generalized risk existed in a facility where "rape was so common and uncontrolled that some potential victims dared not sleep [but] instead . . . would leave their beds and spend the night . . . near[] the guards' station" (quoting *Hutto v. Finley*, 437 U.S. 678, 681–82 n.3 (1978))).

Consequently, Bryant has not alleged any facts that suggest that there was anything more than a "mere possibility" he would be assaulted in the section of RCJ to which he was moved. This does not suffice to state a failure to protect claim under either the Eighth or Fourteenth Amendments. *Pinkston*, 440 F.3d at 889.  Accordingly, Claim One will be DISMISSED.

11

### 2.     Claim Two - Conditions of Confinement

In Claim Two, Bryant alleges that Sheriff Irving and Captain Harris violated his rights by housing him in protective custody, where he was deprived of "sunlight, exercise, and social interaction" for an extended period of time. (ECF No. 10 at 6.)

### a.     Legal Standards

To state a claim based on the conditions of one's confinement, a plaintiff must allege facts in support of two elements. First, he or she must show "deprivation of a basic human need" that is "objectively sufficiently serious." *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997) (cleaned up). To satisfy this standard, a plaintiff must have suffered "a serious or significant physical or emotional injury resulting from the challenged conditions," or face "a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quotation marks and citation omitted).

As with failure-to-protect claims, the second element of a conditions-of-confinement claim concerns a defendant's awareness of the injuries or risks that the plaintiff faces. The standard is objective or subjective based on plaintiff's status as a pretrial detainee or convicted prisoner, respectively. *Short v. Hartman*, 87 F.4th 593, 608–10 (4th Cir. 2023). Under the Fourteenth Amendment, which applies to pretrial detainees, "it is enough that the plaintiff show that the defendant acted or failed to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 611 (quotation marks and citation omitted). Under the Eighth Amendment, a plaintiff must establish that the defendant had "a sufficiently culpable state of mind," which requires either knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could

be drawn that a substantial risk of serious harm existed and that they did actually draw that inference. *Farmer*, 511 U.S. at 834, 837 (cleaned up).

###    b.    Application

As to the first element, Bryant alleges that, for over three months, he spent twenty-three hours per day in his protective custody cell, where he was deprived of "sunlight, exercise, and social interaction." (ECF No. 10 at 6.) This allegation suffices, at the motion to dismiss stage, to satisfy the first element of a conditions of confinement claim. *See, e.g., Porter v. Clarke*, 923 F.3d 348, 357 (4th Cir. 2019) (affirming the district court's finding that a substantial risk of serious psychological and emotional harm existed for plaintiffs who spent "between 23 and 24 hours a day 'alone, in a small . . . cell' with 'no access to congregate religious, educational, or social programming'" (citation omitted))[9]; *Gilliam v. Dep't of Pub. Safety and Corr. Servs.*, No. MJM-23-1047, 2024 WL 5186706, at *17 (D. Md. Dec. 20, 2024) (finding that plaintiff had stated a claim by alleging that, as a pretrial detainee, she spent "about three months" in administrative segregation, during which time she had limited opportunities to leave her cell and was denied access to institutional programming).

The Particularized Complaint also alleges sufficient facts to satisfy the second prong of a conditions-of-confinement claim, whether assessed under the objective or subjective tests described above. Not only does Bryant allege that Captain Harris was the individual responsible

---

[9]    Admittedly, the plaintiffs in *Porter* were subjected to these conditions for years, not months, but no brightline rule exists that states how long an inmate must be confined under particular conditions before a constitutional violation arises. *See, e.g., Mitchell v. Rice*, 954 F.2d 187, 191–92 (4th Cir. 1992) (adopting "a totality of the circumstances test" regarding when denial of out-of-cell exercise opportunities violates the Constitution); *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983) (opining that several factors, including "the size of the cell, opportunity for contact with other inmates, time per day expended outside the cell, justifications for the denial of the right to exercise," and other factors could inform the Eighth Amendment analysis).

for putting him in protective custody, he further alleges that he "filed numerous grievances" about the conditions of his confinement, pausing to show security cameras each time he did so, and that his loved ones sent "dozens of emails" describing his circumstances to Sheriff Irving and Captain Harris. (*See* ECF No. 10 at 5.) *See Hammock v. Watts*, 146 F.4th 349, 363 (4th Cir. 2025) (finding allegations that plaintiff "complain[ed] to all the defendants [ ] but they did nothing to solve the problem" sufficient to satisfy the objective standard of conditions-of-confinement claim and allegations that plaintiff "sent two letters to Defendant Watts" about the conditions at issue sufficient to satisfy the subjective standard).

Accordingly, Claim Two will not be dismissed. Sheriff Irving and Captain Harris may file a motion for summary judgment as to the claim. Any such motion should clarify the appropriate constitutional provision under which Bryant's claim arises.

### B.    Claim Three (Fifth and Sixth Amendments)

In Claim Three, Bryant asserts that Sergeant Ruffin violated his rights under the Fifth and Sixth Amendments when she "played accuser, judge, and executioner, taking away all [of his] privileges for seven days without . . . giving [him] an institutional charge[] and going through the hearing process." (ECF No. 10 at 6.)

As Defendants observe (ECF No. 24 at 8–9; ECF No. 42 at 8–9), Bryant is not entitled to relief as to Claim Three because neither the Fifth nor Sixth Amendments are applicable to his claims. Indeed, the Fifth Amendment applies to federal, not state, action. *United States v. Hornsby*, 666 F.3d 296, 310 (4th Cir. 2012) (observing that "the Fourteenth Amendment's Due Process Clause is a limitation on state conduct," while the "due process protections against the federal government are found in the Fifth Amendment"). Here, where Bryant has sued officials

14

at a municipal jail, the Fifth Amendment does not apply.[10]  The Sixth Amendment, meanwhile,

applies only to criminal prosecutions, *see, e.g., Kirby v. Illinois*, 406 U.S. 682, 690 (1972), and

---

[10]      To the extent that Bryant alleges a violation of his right to due process, the Fourteenth Amendment, not the Fifth, controls that claim. *Massey v. Ojaniit*, 759 F.3d 343, 354 n.5 (4th Cir. 2014).  But even if Bryant had raised his claim under the Fourteenth Amendment, he would still not be entitled to relief.  The Fourteenth Amendment's Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972).  Thus, the first step in analyzing a procedural due process claim concerns whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted).  A liberty interest may arise from the Constitution itself, or from state laws and policies. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Demonstrating the existence of a state-created liberty interest requires a "two-part analysis." *Prieto v. Clarke*, 780 F.3d 245, 249 & n.3 (4th Cir. 2015).  First, a plaintiff must make a threshold showing that the deprivation imposed amounts to an "atypical and significant hardship" or that it "inevitably affect[s] the duration of his sentence." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995); *see Puranda v. Johnson*, No. 3:08CV687, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (citations omitted).  If the nature of the restraint that the plaintiff challenges meets either prong of this threshold, the plaintiff must next show that Virginia's statutory or regulatory language "grants its inmates . . . a protected liberty interest in remaining free from that restraint." *Puranda*, 2009 WL 3175629, at *4 (alteration in original) (quoting *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000)).
     Here, Bryant has no protected liberty interest in the privileges he alleges Sergeant Ruffin to have stripped him of. *See Burrell v. DOCCS*, 655 F. Supp. 3d, 112, 128–29 (N.D.N.Y. Feb. 9, 2023) (collecting cases and observing that "inmates do not have a protected liberty interest in tablet use"); *Allen v. Fields*, No. 7:21cv00244, 2022 WL 885775, at *5 (W.D. Va. Mar. 25, 2022) ("[S]uspension of an inmate's commissary privileges simply does not represent the type of atypical, significant hardship required . . . to create a constitutionally protected interest." (citations omitted)); *Conn v. Stolle*, No. 1:11cv758 (CMH/TCB), 2011 WL 3321136, at *3 (E.D. Va. July 29, 2011) (concluding that loss of television, telephone, recreation and visitation privileges did not warrant constitutional protection).
     Moreover, to the extent that Bryant claims that Sergeant Ruffin deprived him of an item or items (*e.g,*. his tablet or newspaper) in which he possessed a valid property interest, Virginia's provision of adequate post-deprivation remedies forecloses any such claim. *See Wilson v. Molby*, No. 1:12cv42 (JCC/JFA), 2012 WL 1895793, at *6–7 (E.D. Va. May 23, 2012) (finding that Virginia's post-deprivation remedies satisfy the requirements of due process).  Negligent and intentional deprivations of property "do not violate [the Due Process] Clause provided . . . that adequate state post-deprivation remedies are available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (finding due process requirements satisfied by post-deprivation remedy to redress intentional destruction of personal property by prison guard during a shakedown).
     Virginia has provided adequate post-deprivation remedies for deprivations caused by state employees.  Under the Virginia Tort Claims Act, Virginia has waived sovereign immunity for damages for "negligent or wrongful" acts of state employees acting within the scope of employment. Va. Code Ann. § 8.01-195.3.  The United States Court of Appeals for the Fourth Circuit has held that the Virginia Tort Claims Act and Virginia tort law provide adequate post-

15

Bryant's claim does not relate to any past or future criminal proceedings. Accordingly, both the Fifth and Sixth Amendments are irrelevant to this action, and Claim Three will be DISMISSED.

### C.    Claim Four (First Amendment)

In Claim Four, Bryant asserts that Sheriff Irving and Captain Harris violated his rights under the First Amendment[11] by failing to ensure that he received a diet consistent with his religious beliefs. (ECF No. 11 at 2.)

To state a free exercise claim under the First Amendment, a plaintiff must allege facts that suggest that "(1) he holds a sincere belief that is religious in nature;" and (2) that defendants imposed a substantial burden on the practice of his religion. *Whitehouse v. Johnson*, No. 1:10CV1175 (CMH/JFA), 2011 WL 5843622, at *4 (E.D. Va. Nov. 18, 2011) (citing *Hernandez v. Comm'r Internal Revenue*, 490 U.S. 680, 699 (1989)). "Government officials impose a substantial burden on the free exercise of religion by 'put[ting] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Massenburg v. Adams*, No. 3:08cv106, 2011 WL 1740150, at *4 (E.D. Va. May 5, 2011) (alteration in original) (quoting *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)) (some internal quotation marks omitted). However, they do not do so merely by making the ability to exercise one's religion more inconvenient. *See Dorman v. Aronofsky*, 36 F.4th 1306, 1314 (11th Cir. 2022) ("[A] substantial burden is more than an inconvenience and is akin to significant pressure which directly coerces

---

deprivation remedies for torts committed by state employees. *Wadhams v. Procunier*, 772 F.2d 75, 78 (4th Cir. 1985) (finding inmate's recovery in federal court for deprivation of liberty foreclosed, because "Virginia provides adequate tort remedies for post-deprivation compensation"). Because the availability of a tort action in state court fully satisfies the requirement of a meaningful post-deprivation process, Bryant cannot state a claim for the loss of his property under the Fourteenth Amendment. *Wilson*, 2012 WL 1895793 at *6–7.

[11]    Bryant also invokes the Fifth and Sixth Amendments in Claim Four. (See ECF No. 11, at 2.) As the Court has already explained, neither of these sources of law are applicable here.

16

the religious adherent to conform his or her behavior accordingly." (internal quotation marks, alteration, and citation omitted)); *Stephens v. Byrd*, No. 7:18CV00172, 2019 WL 4345378, at *6 (W.D. Va. Sept. 12, 2019) ("Mere inconvenience and minor expense cannot constitute a substantial burden for purposes of a First Amendment claim." (citation omitted)).

Here, Bryant alleges that he is a Rastafarian and "adhere[s] to a religious diet called 'Ital.'" (ECF No. 11 at 1.) This allegation satisfies the first element of a free exercise claim. However, Bryant falls short with respect to the "substantial burden" element. As to that element, Bryant suggests that the Ital diet does not permit the consumption of processed foods, but that officials at the jail nevertheless served him "processed foods and processed meats," thereby "fail[ing] to honor [his] diet." (*Id.*)

Contrary to Bryant's apparent belief, the receipt of processed foods does not amount to a substantial burden. Indeed, even accepting as true the allegation that Bryant received prohibited food items, there is no allegation that he must in any way modify his behavior or betray the requirements of his religion. The Particularized Complaint does not allege, for instance, that any jail official forced Bryant to consume the processed foods that he was provided. Nor does it allege that Bryant did not receive enough food to sustain himself such that he was pressured, or even tempted, to eat foods inconsistent with his religious beliefs. Rather, here, because Bryant can seemingly discard foods he may not eat without facing any pressure to consume those foods and violate his beliefs, he has failed to allege the existence of a substantial burden on the free exercise of his religion. *See Plaster v. Tatum*, No. 7:19CV00376, 2019 WL 2724338, at *3 (W.D. Va. July 1, 2019) (dismissing free exercise claim where plaintiff "d[id] not allege that anyone at the jail ha[d] forced him to consume processed meats" and failed to "explain why he cannot practice his religious dietary beliefs by choosing and consuming only those available

17

items that are consistent with his . . . beliefs"); *Shabazz v. Johnson*, No. 3:12cv282, 2015 WL 4068590, at *10 (E.D. Va. July 2, 2015) (explaining that no substantial burden exists when an inmate can discard food "at odds with" his religious diet (citing *Muhammad v. Mathena*, No. 7:14cv134, 2015 WL 300363, at *3 (W.D. Va. Jan. 22, 2015))).

Further, the Particularized Complaint does not allege that Defendants were involved in any way in determining Bryant's dietary needs or providing him his meals. Nevertheless, in an apparent effort to impute liability to Defendants, Bryant asserts that Sheriff Irving and Captain Harris are "the head of these operations" and argues that issues like the ones he alleges "are normally due to administrative issues." (ECF No. 11 at 2.)

Bryant's claim amounts to a claim for liability under a *respondeat superior* theory, which is not legally viable. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676 (citations omitted). To state a legally sufficient claim for an alleged violation of a federal constitutional right, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Accordingly, the plaintiff must allege facts that affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks omitted); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability is "personal, based upon each defendant's own constitutional violations").

Here, Bryant merely suggests that that Defendants were involved in the alleged violation of his rights simply by effect of their positions in the jail's administrative hierarchy. Contrary to Bryant's suggestion, Sheriff Irving and Captain Harris are not liable simply because they

18

supervise other individuals who he claims violated his rights.  *Vinnedge*, 550 F.2d at 928; *Iqbal*, 556 U.S. at 676 (citations omitted).[12]  For all of these reasons, Claim Four will be DISMISSED.

### D.      Qualified Immunity

Finally, Defendants also seek dismissal of this action on the basis of qualified immunity.  (ECF No. 24 at 13–15; ECF No. 42 at 13–15.)  Qualified immunity is an affirmative defense.  *Sales v. Grant*, 224 F.3d 293, 296 (4th Cir. 2000); *Ridpath v. Bd. Governors Marshall Univ.*, 447 F.3d 292, 305 (4th Cir. 2006).  Courts may consider affirmative defenses in the context of a Rule 12(b)(6) motion only "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense."  *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996).  But a court may also exercise discretion to postpone addressing an affirmative defense at the 12(b)(6) stage if it finds that "a motion for summary judgment — which provides an opportunity for an investigation of the facts surrounding the bare allegations in the pleading — is a more appropriate procedural device to deal with [the affirmative defense] than a motion to dismiss under Rule 12(b)(6)."  Charles A. Wright, Arthur R. Miller & A. Benjamin Spencer, Fed. Prac. & Proc. § 1357 (4th ed. 2024).  Although the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in

---

[12]      To show that a supervising officer failed to fulfill his duties to protect an inmate by ensuring his subordinates act within the law, the inmate must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)) (internal quotation marks and citations omitted).  Bryant fails to allege facts that support any of these three factors.

litigation," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), the Fourth Circuit has recognized that, "[o]rdinarily, the question of qualified immunity should be decided at the summary judgment stage," *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005). *See also Deavers v. Spotsylvania Cnty. Sheriff's Dep't*, No. 3:14CV365-HEH, 2014 WL 2993445, at *4 (E.D. Va. July 2, 2014) ("As the Fourth Circuit has frequently noted, qualified immunity is peculiarly well-suited for resolution as the summary judgment stage with the benefit of a more fulsome record.").

Consistent with the Fourth Circuit's guidance, this Court will exercise its discretion to delay consideration of Defendants' qualified immunity defense, which Defendants may renew as to Claim Two in their motion for summary judgment.

## IV.   CONCLUSION

For the foregoing reasons, Sheriff Irving's Motion to Dismiss (ECF No. 23) and Captain Harris and Sergeant Ruffin's Motion to Dismiss (ECF No. 41) will be GRANTED IN PART AND DENIED IN PART. Claims One, Three, and Four will be DISMISSED WITH PREJUDICE. Sergeant Ruffin will be DISMISSED from this action. Only Claim Two remains. The remaining parties will be directed to file any motions for summary judgment within sixty (60) days.

An appropriate Order shall accompany this Memorandum Opinion.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to Plaintiff.

_____ /s/ _____
David J. Novak
United States District Judge

Richmond, Virginia
Dated:  July 28, 2026

20